36870.   HALL *v.* ST. PAUL-MERCURY INDEMNITY COMPANY *et al.*

DECIDED OCTOBER 29, 1957.

*Clifford Oxford, Albert P. Feldman,* for plaintiff in error.
*Currie, McGhee & Weltner,* contra.

NICHOLS, J. It is well settled that an award of the State Board of Workmen's Compensation which is supported by any competent evidence must be, in the absence of fraud or a mistake of law, affirmed by a reviewing court; and that the fact that compensation was paid on the original injury does not preclude the employer and insurer from contending that the present disability, if any, did not stem from the original injury. *Pepperell Mfg. Co.* v. *Mathis,* 92 *Ga. App.* 85 (88 S. E. 2d 201); *Roberts* v. *Lockheed Aircraft Corp.,* 93 *Ga. App.* 440 (92 S. E. 2d 51); *Rivers* v. *Travelers Ins. Co.,* 93 *Ga. App.* 779 (92 S. E. 2d 818). "Where the injury is not to a specific member, compensation must be determined under Code § 114-404 'when the incapacity to work resulting from an injury is total' or under Code § 114-405 'where the incapacity for work resulting from the injury is partial.' Under the two . . . Code sections, 'disability' means not percentage of physical impairment but percentage of impairment of earning capacity. *Blue Bell Globe Mfg. Co.* v. *Baird,* 61 *Ga. App.* 298 (6 S. E. 2d 83)." *Employers Liability &c. Corp.* v. *Hollifield,* 93 *Ga. App.* 51, 52 (90 S. E. 2d 681).

There was no evidence presented that the claimant had suffered any "change in condition" as to his left hand, nor was there any evidence of any disability to any other specific member, and the sole question presented is whether there was any change in condition that impaired the claimant's earning capacity.

At the time the claimant received the accidental injury on January 10, 1953, in addition to the injury to his hand he also received an injury to his back, but was able to return to work and to continue to do his job until the latter part of November, 1955, although during all of this period he did not serve in the

same capacity as he was serving on January 10, 1953, for he formed a partnership with his employer on September 1, 1954, which continued until November 30, 1955. It does not appear from the evidence that there was any major change in the claimant's duties under the partnership from what they had been prior to that time. On October 3, 1954, while hunting, the claimant suffered a "blackout" or "seizure" which lasted about a minute or so but did not leave him with a clouded mind. In fact he testified that his mind was "clear" upon regaining consciousness. Thereafter he suffered from such momentary "blackouts" or "seizures" on November 29, 1954, January 6, June 17, and November 15, 1955. At the time he suffered the "blackout" or "seizure" on June 17, he fell and again suffered an injury to his back.

It appears that two contentions are made by the claimant, (1) that the injury occasioned on January 10, 1953, (for which injury some compensation has been paid), caused the "blackouts" or "seizures" which in turn caused the additional back injury on June 17, 1955, and (2) that even if the injury on January 10 did not cause the "blackouts" or "seizures" and in turn the second injury to his back, the first injury to his back has now caused an "impairment in his earning capacity."

Taking the contentions of the claimant in reverse order, there was evidence to authorize a finding that either of the back injuries caused a partial disability to the claimant's back, that with such partial disability he could still continue to do his work as a construction superintendent, (although he could not operate heavy earth-moving machinery on occasion as he had done prior to his first injury), that there were other superintendents doing work similar to his who didn't know how to operate such machinery, and that being able to operate such machinery was not a necessary prerequisite to his work since he worked from February, 1953 (after his first injury), until November, 1955 (the time when the partnership was dissolved), and did not regularly operate such equipment during this time:

Inasmuch as the element of pain and suffering, or increased discomfort or difficulty in performing the duties after an injury is not taken into consideration by the Workmen's Compensation Act (Code, Ann., Ch. 114), the claimant's back injuries in and

of themselves would not require a finding that there had been any change in condition which would authorize payment of compensation for a loss of earning capacity. See *American Mutual Liability Ins. Co.* v. *Hampton*, 33 *Ga. App.* 476 (1) (127 S. E. 155).

The remaining contention of the claimant is that he cannot do the work because of the "blackouts" or "seizures" for fear of "blacking out" and injuring either himself or someone else.

Five physicians testified, either at the hearing or by deposition, and four of them testified that they could find no connection between the claimant's injury of January 10, 1953, and his "blackouts" or "seizures" (the first of which occurred on October 3, 1954, 21 months after the injury), while the fifth physician testified, in substance, that there *could* be a connection between the original injury and the "blackouts" or "seizures" but they could have also been caused by any one of 49 other causes and that he could not point to any one of the possible causes and state that "blackouts" or "seizures" were brought about by such cause.

Under such evidence, where the finding was authorized that the claimant did not carry the burden of proof of showing that such disability was brought about by the injury on January 10, 1953, the finding of the deputy director that such "blackouts" or "seizures" were not caused by such injury cannot be disturbed. See *Rivers* v. *Travelers Ins. Co.*, 93 *Ga. App.* 779, supra.

Therefore, the judgment of the superior court affirming the award of the deputy director must be affirmed.

*Judgment affirmed. Felton, C. J., and Quillian, J., concur.*