38064. WILLIAMSON *v.* AETNA CASUALTY & SURETY COMPANY *et al.*

TOWNSEND, Judge. Under the theory of the Georgia Workmen's Compensation Law, compensation may be granted to an employee whose injury arises out of and in the course of his employment under the following conditions: For total incapacity

to work, resulting in cessation of remunerative earnings under Code (Ann.) § 114-404; for partial incapacity to work resulting in diminution of earnings, under Code (Ann.) § 114-405; for permanent partial industrial handicap resulting from loss of or loss of use of a specific member, whether total or partial; under Code (Ann.) § 114-405, regardless of loss of earnings, and for incapacity resulting from occupational disease which results in inability to perform work for remuneration equaling or exceeding 33⅓% of the previous average weekly wage, under Code (Ann.) § 114-801.

This employee received acid burns while engaged in the duties of his employment. The burns healed but he was left with a resultant painful itching condition on his lower legs and ankles diagnosed as chronic eczematoid dermatitis. He lost no time from work and suffered no decrease in wages. These uncontroverted facts established that while the claimant received an injury otherwise compensable he can have no claim under Code (Ann.) §§ 114-404, 114-405 or 114-801 because he suffered no disability affecting his average weekly wages.

As to Code (Ann.) § 114-406, the claimant suffered no loss of a member. The hearing director further found that he suffered no permanent loss of use of a member as defined in that section, and the only question before this court is whether there was any evidence to support this finding of fact, which finding was in turn included in the award of the full board affirming the original award denying compensation other than payment and reimbursement of medical expenses.

On this question, there was the following evidence: Dr. Ferris testified that the claimant had a disability for his occupation as an electrician; that in hot weather he might not be able to work at that job; that year-round for ambulatory work he had a 30% disability of the right leg and a 15% disability of the left leg; that he forces himself to work but certain weather may incapacitate him completely for possibly one or two weeks; that the condition does not result in any impairment of the motor functions of the leg, that it would result in pain interfering with the range of motion; that it has no effect on the moving back and forth of the legs; that he could with pain use them as well as before so far as the nerves and muscles are concerned; that he may get infection since the lesions run and weep in hot weather; that the condition is indefinite, it will be there for several years and may be permanent; that

there is a constant itching sensation, probably worse with long standing; that except for the pain he suffers there is nothing to prevent him from prolonged standing; that his legs function as well as before he contracted the dermatitis, that prolonged standing would have a marked effect on his present condition. Dr. Thornton testified that he did not know how long the condition will continue; it can clear up or continue indefinitely; that the claimant's right leg is 80% disabled and the left leg 50% disabled, resulting in an approximate 75% disability for the job in which he is presently engaged; that the witness does not mean percentage of loss of use of the leg but a disabling factor in relation to his occupation which would prevent his carrying out his job in at least 80% of the cases he would try, that his chances of being able to continue in his work without having trouble are not better than 20%; that the motor functions are only minimally impaired; there is no loss of muscle function; that there is a possibility of involvement of the bone but witness thinks not; that he can move his limbs in the same manner as before, except for pain and discomfort which does limit his use of his legs; that the disability figures are based on pain and discomfort in doing the work; that functionally his leg work is normal except that being down on his knees might cause the dermatitis to become worse; that the evaluation is based on pain and irritation and tendency for aggravation of the dermatitis. Dr. Hailey testified that the condition ought to clear up and was not permanent at the time of his examination, but he offered no more definite prognosis; that the claimant has no permanent loss of use of his legs; that he has some permanent disability based on Veterans Administration ratings allowing disability for skin diseases; that the claimant has a 10% disability in any job or work he might want to do, involving his skin only; that this involves no loss of motor functions, skeletal-muscular system, nervous system or internal organs; that the nerves, muscles and bones are not involved; that in the witness' opinion the claimant may continue working, and chances are it would not interfere with his work, but there is usually a 10% disability allowed; that the condition presently existing will make him less efficient in his employment.

Thus, although all the doctors who testified disagreed as to the percentage of disability, they substantially agreed that the claimant did suffer a disability to his legs; that this disability

did not involve loss of physical function, but it exists because of the fact that normal use of the legs in his occupation will be accompanied by pain and discomfort to an extent that will interfere with his ability to earn a living.

This confronts us with the question of whether pain produced by injury to a specific member which is so great on use of that member as to substantially limit the amount of work a man may do may be considered a partial loss of use of the member. Under all of the testimony the claimant can no longer stand, crawl or work in hot places as he was able to do before his injury. This disability is limited to the legs, and there, if entitled to consideration, can be considered only as related to loss of use of a specific member. While Dr. Hailey said the claimant had no permanent loss of use of his legs he did say that he had a 10% disability (which is necessarily confined to the specific members) and we cannot distinguish between the words disability and loss of use as here used. For this reason Dr. Hailey's testimony is not alone sufficient as a basis for finding that the claimant had suffered no loss of use. Dr. Thornton likewise testified as to the percentage of disability to the legs, and added that he did not mean loss of use except that the use of the limbs will be limited because of pain and discomfort. Dr. Ferris testified to a specific disability resulting from "pain interfering with the range of motion," and thought this, together with aggravation of the condition by normal use and lessened resistance to infection would totally incapacitate him from time to time. The hearing director did not consider this testimony, relying upon *American Mut. Liability Ins. Co.* v. *Hampton,* 33 *Ga. App.* 476 (1) (127 S. E. 155) and *Hall* v. *St. Paul-Mercury Indem. Co.,* 96 *Ga. App.* 567 (101 S. E. 2d 94) to the effect that "there is no recognition of the elements of pain and suffering, or of increased discomfort and difficulty in performing the labors for which wages are paid after the injury." These cases make the statement by way of emphasis that in cases of total and partial disability the measure of the award is the decrease in economic return, and pain and suffering cannot be considered, which is perfectly true. In injuries to specific members, loss of use, or disability, must necessarily be rated on the basis of pain among other factors, for where pain is sufficiently severe to prevent a normal function of the member a partial loss of use of that member results. "Pain which is so severe that the

disability of the employee results may be compensable." 99 C. J. S. 657, Workmen's Compensation, § 200. We cannot distinguish between disability to a member and loss of use of a member. Supposing that as a result of an eye injury the patient could see as well as ever, but that because of increased sensitivity to light the use of the eye caused such pain that the patient ceased or partially ceased to use it—this would surely be a disability, and also a loss of use, although the mechanical function of the nerves and muscles of the eye were unimpaired. If one cannot use his arm in a normal manner because of arthritis, he has suffered a partial loss of use of the arm although, if the element of pain be entirely disregarded, the arm could physically perform the same movements as before. Pain itself is not compensable. Disability is not compensable under Code (Ann.) §§ 114-404 and 114-405 regardless of pain except as there is a decrease in monetary return. Under Code (Ann.) § 114-406 also, pain is not itself compensable, but where it is so severe that disability results, then the fact that the disability, or loss of use, results because the human mechanism must cease the use rather than bear the pain, a compensable loss of use results. Nor can we distinguish between disability resulting from injury to the skin of the leg and disability resulting from injury to the bones, nerves, or muscles, since the skin, as well as the other leg tissues, is essential to the existence of this member.

The error in the award lies in the fact that neither the director, the full board, nor the judge of the superior court on appeal considered this injury as compensable under Code (Ann.) § 114-406 for the reason that it was regarded as resulting from pain and therefore not compensable. Other aspects of the case are not dealt with here, such as whether this injury should be considered an occupational disease (in which case Code (Ann.) § 114-406 would not apply) ; whether it is permanent in nature, or whether the employee sustained the condition as a result of his failure to follow medical treatment, since these matters are not dealt with in the award. There was sufficient evidence to support a finding, which the hearing director at least impliedly made, that the acid burns constituted an injury arising out of and in the course of the employment, and that the present dermatitic condition proximately resulted from the burns, and the evidence demands a finding that there was a resulting partial loss of use of the legs which

would be compensable under Code (Ann.) § 114-406 unless defeated by some other provision of the Workmen's Compensation Law.

The judgment of the superior court affirming the denial of compensation is reversed, with the direction that the case be remanded to the Board of Workmen's Compensation for further action in accordance with this opinion.

*Judgment reversed with direction. Gardner, P. J., and Carlisle, J., concur.*

DECIDED JANUARY 25, 1960—REHEARING DENIED
FEBRUARY 11, 1960.

*Albert P. Feldman,* for plaintiff in error.
*Haas, White & Douglas, George A. Haas,* contra.