## 50778. MURRAY v. HARTFORD ACCIDENT & INDEMNITY COMPANY et al.

MARSHALL, Judge.

The question raised by this appeal is whether claimant should receive specific member disability for a lost finger or for his whole hand. The claimant, Murray, was injured on November 5, 1973, when his ring caught on a piece of machinery when he jumped down from the machine. The weight of his body pulled the ring finger from his left hand resulting in its complete amputation. An agreement as to compensation was entered into between the claimant and the employer and insurer entitling claimant to receive $63.43 a week (based on an

average weekly wage of $95.14) beginning November 12, 1973, and continuing during total incapacity not to exceed 52 weeks. On March 13, 1974, the employer and insurer requested a hearing to determine a change in condition and to determine a specific member disability.

At the hearing, held before a deputy director on June 14, 1974, testimony was heard from the claimant and three physicians. The claimant testified that because of the loss of the finger he has trouble gripping items, cannot make a tight fist and feels that he has no strength in the hand; that he has to be careful not to contact the stump against anything because "I get a bad nerve through the hand"; that sometimes the hand goes to sleep; that he has a job as an assistant in a hospital where he lifts and moves patients in attending them and pushes wheelchairs "but as far as lifting or trying to pull away from something I never because its so tender and I know that I have hurt it several times, bumped it several times and I can't get any use out of it." Dr. Bailey, who examined claimant on March 11, 1974, in his deposition stated that he found tenderness in the stump, possibly caused by a neuroma (a nerve tumor); that there was weakness in the whole hand and numbness in the little finger; that there was some atrophy of muscles in the hand caused by lack of use and some ulnar nerve deficit of an unknown etiology; that claimant had "reflex sympathetic dystrophy with chronic severe burning pain" or sensitivity caused by the amputation; that at the time he saw claimant "the hand was 100 percent useless as far as function" and that he had a permanent disability to the hand of "35 percent."

Another physician, by deposition, stated that when he saw the claimant on April 30, 1974, he found a 50% loss of power in flexing the little finger but that he had a "fairly good grasp" with the two remaining fingers; that as far as using the hand in work, because of the pain in the stump and the loss of power in the little finger, the claimant could do anything that required only use of the thumb, index and middle fingers.

Dr. Tamayo, who attended claimant when he was injured and followed his recovery, stated that when he first saw him there were no complaints of pain in the other fingers and after maximum recovery, he found no injury

to other fingers; that he had full range of motion in the little and middle fingers; that the stump was not tender; that there was a 100% loss of use of the ring finger and that he discharged the claimant from treatment on February 8, 1974, at which time he had reached maximum improvement.

The deputy director found the "claimant has a weakness in his left hand and loss of sensation in his little finger as the result of some ulnar nerve deficit, the etiology of which is unknown. The ulnar nerve deficit could be caused by many things, but amputation is not one of them. Some of claimant's weakness of the hand is the result of disuse because of pain." The director found that the claimant's entitlement to compensation of $63.43 a week for total disability terminated on February 8, 1974, the date on which he was able to return to work, and that claimant was entitled to additional compensation of $57.08 a week for 30 weeks under Ga. L. 1973, S. B. No. 267, Act No. 131 (Code Ann. § 114-406 (d)) for 100% loss of a third finger. The full board and the superior court affirmed the award.

Claimant appeals the award contending basically that he should have been awarded compensation for loss of use of his left hand rather than for loss of the finger only. He asserts that the award was based on the erroneous legal theory that injury to the hand was not compensable even where the injury to a finger has healed in such a way as to impair the usefulness of what is left of the hand. *Held:*

The injury in this case was to the finger and not the hand. It is true that an injury to a finger is an injury to the hand of which it is part as an injury to the hand is an injury to the arm, etc. "[B]ut the law provides that if the hand is injured as a result of the injury to a finger, *and in no other way,* the injury to the hand shall be compensated for in a certain and definite manner, namely, a certain amount for the loss of the finger, or the use thereof, or for partial loss, or partial loss of use. We can think of no other reasonable construction of the law because if there is only an injury to a finger, and compensation as for an injury to the whole hand is allowed it seems that uncertainty, lack of uniformity, and confusion would result in the

attempted administration of the compensation law."
*Travelers Ins. Co. v. Colvard,* 70 Ga. App. 257, 258 (28
SE2d 317). (Emphasis supplied.)

Claimant does not appear to be contesting this rule,
but contends that the injury to the hand was not
occasioned *solely* by the loss of the finger but also by the
defective healing at the site of the amputation, to wit: the
development of a neuroma or nerve tumor, which in turn
causes sensitivity, which in turn causes pain to the touch,
which in turn causes lack of use, which in turn causes
atrophy of the muscles of the hand, which in turn causes
weakness to the whole hand and particularly the little
finger.

As we read claimant's testimony and that of the
physicians who examined him (except Dr. Tamayo), the
neuroma is the sole source of injuries to the hand about
which claimant complains and for which he seeks
compensation. From Dr. Tamayo's testimony, we find no
other evidence of an injury to the hand itself or to the other
fingers caused by the trauma to the ring finger. There was
testimony that the development of a neuroma at the site of
an amputation does not occur in every case, but that it
does occur on occasion, and may be relieved by surgery to
remove the congestion of nerve endings. There was also
testimony that muscle atrophy and weakness in the hand
could be remedied by physical therapy.

We find this case controlled by *Wiley v. Bituminous
Cas. Co.,* 76 Ga. App. 862 (4) (47 SE2d 652). There this
court reversed the findings and award of the deputy
director because it limited evidence at the *change in
condition* hearing, to the loss of the fingers only without
considering whether or not the claimant may have lost the
use of his hand because of defective healing. The claimant
there sustained various degrees of disabling injuries to
four fingers of his right hand for which he received
permanent partial handicap compensation under Code
Ann. § 114-406. Because of a failure to heal and defective
healing in such a way as to tie down the tendons running
through the hand to the fingers, the claimant contended
that he suffered a 75% loss of use of the hand. This court
held: "When fingers are either totally or partially
disabled, what is left of the hand is presumed to be

serviceable. However, if the injured fingers fail to heal, or improperly heal, this may render useless what is left of the hand. Also it may impair what is left of the hand to a percentage of disability far greater than the loss of the fingers where they properly healed." *Wiley v. Bituminous Cas. Co.,* 76 Ga. App. 862, 871, supra.

There is no finding of fact in this case as to whether or not there has been an injury to the hand compensable under Code Ann. § 114-406 (1) and if so whether or not it is permanent or temporary and the percentage of loss, if any. And we are reluctant to read implications in his findings that his finding of loss of the finger only is a finding of no loss of use of the hand, or that an award for a percentage loss of use of the hand is less than the award for the loss of finger. See e.g. *Holcombe v. Fireman's Fund Ins. Co.,* 102 Ga. App. 587 (116 SE2d 891). It is obvious from the specific finding by the deputy director that the "claimant has a weakness in his left hand" and that "some of the claimant's weakness in the left hand is the result of disuse because of pain," that the director was operating under the erroneous theory that the claimant could not be compensated for loss of use of the hand because pain is not compensable under workmen's compensation laws. See *Hall v. St. Paul-Mercury Indem. Co.,* 96 Ga. App. 567 (101 SE2d 94); *American Mut. Liab. Ins. Co. v. Hampton,* 33 Ga. App. 476 (1) (127 SE 155). But see *Williamson v. Aetna Cas. &c. Co.,* 101 Ga. App. 220 (113 SE2d 208). If there were no specific evidence of the existence of the neuroma, we would affirm the findings under the "any evidence" rule. But because the evidence clearly shows its existence, we must reverse and remand for further findings as to its effect on claimant's asserted right to receive compensation for loss of use of his left hand under Code Ann. § 114-406 (1).

*Judgment reversed and remanded for further findings. Bell, C. J., and Webb, J., concur.*

ARGUED JUNE 16, 1975 — DECIDED SEPTEMBER 3, 1975 —
REHEARING DENIED SEPTEMBER 29, 1975.

*George & George, Mrs. William V. George,* for

appellant.

*Harris, Watkins, Taylor & Davis, Joseph H. Chambless,* for appellees.