Cora KROEPLIN, Appellant,

v.

**NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellee.**

Civ. No. 870078.

Supreme Court of North Dakota.

Nov. 24, 1987.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for appellant, argued by LaDonne R. Vik.

Dean J. Haas (argued), North Dakota Workmen's Compensation Bureau, Bismarck, and Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for appellee. Appearance by Douglas R. Herman.

MESCHKE, Justice.

The North Dakota Workmen's Compensation Bureau denied a claim by Cora A. Kroeplin for permanent partial impairment of her right knee because it was not substantiated by the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (2nd edition, 1984) (*"AMA Guides"*). On appeal the district court affirmed. On further review, we reverse and remand.

The Bureau adopted Directive 51C:

"In order to establish more certainty and uniformity in the award of permanent impairment benefits pursuant to North Dakota Century Code Sections 65–05–12, 65–05–13, and 65–05–14, the existence and degree of permanent impairment shall be based upon medically and/or scientifically demonstrable findings.

"Where not inconsistent with the North Dakota Workmen's Compensation Act, the latest available edition of the 'Guides to the Evaluation of Permanent Impairment' by the American Medical Association is adopted as the primary standard for determining permanent impairment.

"Nothing in this directive shall be construed to prevent the presentation of demonstrable medical and/or scientific findings which are not contemplated by the American Medical Association 'Guides' in determining permanent impairment." [1]

On December 26, 1980, while employed by Dakota Hospital, Kroeplin injured her right knee in a fall on her employer's parking lot. The Bureau paid Kroeplin's medical expenses and awarded her disability benefits.

Kroeplin also sought a permanent partial impairment award based upon her treating physician's evaluation that Kroeplin "has a 25% permanent impairment of the right lower extremity at the knee ... that trans-

---

1. The Bureau is authorized to "make, promulgate, and enforce such rules, not inconsistent with the provisions of this title, as may be necessary to carry out the provisions" of the Workmen's Compensation Act. Section 65–02–08, N.D.C.C. The directive was not adopted pursuant to Chapter 28–32, N.D.C.C., nor was it published in the North Dakota Administrative Code. Because the parties have not raised an issue about promulgation, we need not address one. *See Hammond v. North Dakota State Personnel Bd.,* 345 N.W.2d 359 (N.D.1984). *Compare Little v. Spaeth,* 394 N.W.2d 700 (N.D.1986) (where the issue was raised and briefed, unpublished personnel policies were held invalid).

lates to 10% impairment of the whole man." From a diagnostic arthroscopy, he diagnosed "Grade 2 and 3 chondromalacia medial femoral condyle, right knee." His evaluation took into account such things as how long Kroeplin can stand in one position, how far she can walk without discomfort, how she climbs stairs, how long she can sit, "the level of pain that she is experiencing on a regular basis," and changes she has made in her lifestyle. That physician stated that Kroeplin's impairment was not ratable under the *AMA Guides* and that the "functional rating system that I utilized is not referenced anywhere in the medical literature that I am aware of."

An earlier treating physician had found "the development of a calcification of the medial collateral ligament of the right knee" and concluded that Kroeplin "definitely has pain on flexion and extension of the knee." That physician assigned an impairment rating of "two and a half (2½) percent impairment of the knee taking the leg as one hundred (100) percent."

Section 65–01–02(17), N.D.C.C., defines "permanent impairment" as "the loss of or loss of use of a member of the body." The Bureau requires that impairment be ratable under the *AMA Guides*. As interpreted by the Bureau, the *AMA Guides* require objective demonstration of impairment by loss in range of motion, strength loss, or sensory deficit.[2] The Bureau held:

> "The claimant has not substantiated loss of range of motion of her knee, strength loss, or motion or sensory deficit to a degree which entitles to her [sic] a permanent partial impairment award pursuant to the AMA Guides.
>
> "The greater weight of the evidence indicates that objective medical evidence does not substantiate that the claimant is permanently partially impaired in connection with her knee injury on December 26, 1980."

The Bureau concluded that Kroeplin "failed to prove that she is physically impaired" and "failed to prove that she is entitled to a

permanent partial impairment award under the North Dakota Workmen's Compensation Act." The Bureau denied Kroeplin's claim and the district court affirmed the Bureau's decision.

■ Both sides agree that Kroeplin was not entitled to an impairment award if the *AMA Guides* controlled. But they disagree about whether the *AMA Guides* could be made controlling. We view the issue as whether the Workmen's Compensation Act authorized a permanent partial impairment award to an injured worker whose impairment was not objectively demonstrable.

"The Workmen's Compensation Act is to be construed liberally in favor of an injured workman to promote well-being of the workman" [Syllabus 4, *Boettner v. Twin City Construction Co.*, 214 N.W.2d 635 (N.D.1974)] by extending its benefit provisions to "all those who can fairly be brought within them" [*Gregory v. N.D. Workmen's Compensation Bureau*, 369 N.W.2d 119, 122 (N.D.1985)]. An award under § 65–05–09, N.D.C.C., compensates for loss of earning capacity, while awards under §§ 65–05–12, 65–05–13, and 65–05–14, N.D.C.C., compensate for the impairment, loss, loss of use, or partial loss of use of a portion of the body. *See Buechler v. N.D. Workmen's Compensation Bureau*, 222 N.W.2d 858 (N.D.1974).

Our decision in *Buechler* recognized what the Legislature had already recognized—that, in addition to affecting earning power, parts of one's body serve personal and social purposes as well, and that a worker should be compensated to some extent for those effects, other than occupational, from an injury which impairs a part of his body. While the Bureau has cautiously avoided suggesting that *Buechler* was wrongly decided, it has gone to some lengths to apprise us of Professor Larson's criticism of that decision as "unsound compensation theory." *See* 2 *Larson's Workmen's Compensation Law* § 57.14(f). Nevertheless, the Bureau concedes that, in

---

**2.** Kroeplin's counsel conceded at oral argument that the Bureau has fairly interpreted the *AMA* *Guides.*

amending §§ 65–05–12, 65–05–13, and 65–05–14, N.D.C.C., after *Buechler*, "[t]he legislature intended to endorse this court's holding and clarified that these sections were indeed intended to cover the loss of or the loss of use of a member of the body."

In *Lyson v. N.D. Workmen's Compensation Bureau*, 129 N.W.2d 351, 354 (N.D. 1964), this court rejected the Bureau's contention that it was "liable for compensation to a claimant, ..., only to the extent that his disability may be demonstrated by objective physical findings." We see no reason to treat impairment differently than disability in this respect. It has been judicially recognized that "where pain is sufficiently severe to prevent a normal function of the member a partial loss of use of that member results." *Williamson v. Aetna Cas. & Sur. Co.*, 101 Ga.App. 220, 113 S.E.2d 208, 211 (1960). *See also Smith v. Industrial Commission*, 113 Ariz. 304, 552 P.2d 1198 (1976) (accident-produced pain preventing an injured worker from returning to heavy work was compensable even though the pain was merely a subjective finding and not ratable under the *AMA Guides*); *Quality Petroleum Corp. v. Mihm*, 424 So.2d 112 (Fla.App.1982) (it would be contrary to the purpose of the Workers' Compensation Act to deny compensation for a physical impairment not addressed by the *AMA Guides*).

The Bureau concedes that pain may cause permanent partial impairment. The statutory definition of permanent impairment is not limited to one shown only by objective findings. The Bureau's requirement of objective findings adds a condition to compensability not present in the statute. As this court said in *Buechler, supra,* 222 N.W.2d at 862:

"Where the provisions of a statute are clear and would allow compensation, it is improper for the Workmen's Compensation Bureau to inject its own views on the policies underlying the Workmen's Compensation Act by imposing additional restrictions on the statutory language contained therein. In the instant case, the court will not read into a statute an exclusion where one does not expressly exist. Any change in legislation is not within the province of the court, but is subject to the action of the legislative assembly."

We conclude that the Workmen's Compensation Act authorized a permanent partial impairment award to an injured worker whose impairment was not objectively demonstrable. The Bureau therefore erred in denying compensation solely because Kroeplin's impairment was not substantiated by objective medical evidence. Therefore, we reverse.

■ The only medical evidence in this record showed that Kroeplin had a permanent partial impairment. Both physicians discerned pain and its effect. They identified objective evidence (chondromalacia and calcification) indicative of impairment, although not ratable under the *AMA Guides*. Both physicians found that Kroeplin had an impairment, but they differed as to the degree. Accordingly, we remand for further proceedings by the Bureau to determine the extent of impairment.

GIERKE, J., and DOUGLAS B. HEEN, Surrogate Justice, concur.

DOUGLAS B. HEEN, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

VANDE WALLE, Justice, concurring in result.

I concur in the result reached by the majority opinion, but for a different reason. I would not reach the issue decided by the majority opinion, i.e., the authority of the Bureau to adopt the American Medical Association's Guides to the Evaluation of Permanent Impairment ("AMA Guides") in order to establish more certainty and uniformity in the award of permanent impairment benefits.

Section 65–02–08 authorizes the Bureau to "make, promulgate, and enforce such rules, not inconsistent with the provisions of this title, as may be necessary to carry out the provisions of this title." However, those rules must be made and promulgated, if they are to be effective, pursuant to Chapter 28–32, N.D.C.C., the Adminis-

trative Agencies Practice Act. As the majority opinion notes at footnote 1 thereof, these guidelines were not adopted pursuant to Chapter 28–32, nor do they appear exempt from that procedure by virtue of Section 28–32–01(6). It appears to me that the adoption of such a significant and substantive standard for a claimant to meet must be accomplished by more than the mere issuance of an informal "directive," i.e., it must be adopted in accordance with the formal rule-making power given the Bureau pursuant to Section 65–02–08 and Chapter 28–32, N.D.C.C. It is only by this procedure that the directive has the "force and effect of law." Sec. 28–32–03, N.D.C.C.

If I were to decide the issue of the authority of the Bureau to adopt the AMA Guides, I might decide it contrary to that of the majority opinion because of the subjectivity of pain and because the directive, if it were a rule adopted pursuant to Chapter 28–32, permits the presentation and presumably the reliance upon, "demonstrable medical and/or scientific findings which are not contemplated by the American Medical Association 'Guides' in determining permanent impairment." However, before making that decision we should have available to us the information which would be available if the procedure contemplated by Section 28–32–02, N.D.C.C., had been followed by the Bureau. ("Prior to the adoption, amendment, or repeal of any rule, the agency shall adopt a procedure whereby all interested persons are afforded reasonable opportunity to submit data, views, or arguments, orally or in writing. In case of substantive rules, opportunity for oral hearing must be granted if requested.") Such information would be invaluable to me in determining if the AMA Guides are, as the Bureau argues, necessary "In order to establish more certainty and uniformity in the award of permanent impairment benefits ..." It is possible that if the statutory procedure were followed and the information were available to us, that information might persuade me to agree with the majority opinion. It is also possible that if the Bureau had followed such a process it might conclude that such a standard was not necessary. Unless that procedure has been followed I do not believe this court should answer the question of the Bureau's authority to adopt such a standard.

Because the "directive" was not adopted pursuant to Chapter 28–32, I would hold it invalid and of no effect in accord with our decision in *Little v. Spaeth*, 394 N.W.2d 700 (N.D.1986). Because the standard is ineffective it cannot control the Bureau's decision in this matter and, inasmuch as the Bureau's decision is predicated on Kroeplin's failure to meet the standard, rather than the lack of evidence to substantiate her claim, I concur with the decision to reverse the decision of the agency.

ERICKSTAD, C.J., concurs.