**Kenneth FROST, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**Civ. No. A3–95–63.**

United States District Court,
D. North Dakota,
Southeastern Division.

Aug. 27, 1996.

Gary A. Ficek, Fargo, ND, for Plaintiff.

Lynn E. Crooks, Asst. U.S. Atty., Fargo, ND, Frank V. Smith, III, Dept. of HHS, Denver, CO, for Defendant.

## MEMORANDUM AND ORDER

KLEIN, United States Magistrate Judge.

Kenneth Frost filed this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), seeking judicial review of a final decision of the Commissioner of Social Security. The case involves the coordination of North Dakota workers' compensation benefits with federal Social Security disability benefits. Frost injured his back in a work related accident on August 5, 1992, and became disabled. There is no dispute that he is disabled. On June 23, 1993, defendant found Frost disabled with the period of disability commencing November 4, 1992, and began paying him disability benefits as of May 1993. Frost settled all claims he had against the Workers' Compensation Bureau ("the Bureau") and received two lump sum payments. Frost notified defendant that he had settled his workers' compensation claim and defendant responded that it would begin

to take a setoff on its disability obligation based on the workers' compensation settlement. Frost objected to the setoff in the appropriate administrative channels and now seeks judicial review of the Commissioner's final decision to take a setoff.

The Commissioner initially awarded Frost disability benefits of $778.20 per month (Tr. 96) and determined his "average monthly earnings" for Social Security purposes to be $1,549. At the time he began receiving Social Security payments, Frost was also receiving $206 per week ($893 / month) in lost time workers' compensation benefits from the State of North Dakota. Because of the operation of North Dakota workers' compensation law's offset provision, N.D. Cent Code § 65–05–09.1, Social Security did not apply an offset to Frost's federal benefits.[1]

In part because of a dispute concerning the appropriateness of a rehabilitation plan, Frost elected to settle his claims with the Bureau in the fall of 1993 rather than continue to receive monthly workers' compensation payments. He received two lump sum payments from the Bureau: one for $9,600 on August 24, 1993 (the "first award") (Tr. 45,

47), and one for $18,691.93 on October 1, 1993 (the "second award") (Tr. 50–52). He entered into a stipulation for final settlement of all his claims against the Bureau for injuries arising out of the work-related accident. Frost thereafter notified the Social Security Administration of the settlement payments. (Tr. 56)

When a disabled person receives both Social Security and state workers' compensation benefits, the Act provides for a reduction in the Social Security Benefits.[2] The setoff provision sets a ceiling of 80% of "average current earnings"[3] on total workers' compensation and Social Security disability payments. For instance, if a person with "average current earnings" of $100 receives $50 in a month from state workers' compensation, and would normally be entitled to $50 in Social Security disability benefits under Section 423[4] in that month, the setoff provision reduces the Social Security payment to $30 to ensure that the total benefits are only $80, or 80% of "average current earnings." The purpose of this provision is to avoid a situation in which a worker receiving both state

---

**1.** For several months Frost received both his full workers' compensation benefit and his full Social Security benefit Apparently this happened because the Workers' Compensation Bureau was not aware Frost had begun receiving Social Security benefits. However, when the Bureau learned of Frost's receipt of Social Security benefits, it implemented a retroactive offset by recapturing the amount of overpayment. This happened to coincide with the timing of Frost's settlement with the Bureau, so the Bureau accomplished the overpayment recapture through a reduction in the net lump sum settlement payment to Frost. *See* App. 2 to Plaintiffs Brief (Doc # 8).

The calculation for the recapture appears to have been the following: Frost was receiving $778.20 / month in Social Security payments. The North Dakota offset provision calls for offset of½ of the Social Security payment. The Bureau calculated the offset to be $89.77 / wk. Between May 1, 1993 and August 10, 1993 (inclusive) there were 14.57 weeks (102 days). 14.57 weeks time $89.77 / wk is $1,308.08.

**2.** The offset provision, 42 U.S.C. § 424a(a), states in pertinent part:

If for any month prior to the month in which an individual attains the age of 65—
 (1) such individual is entitled to benefits under section 423 of this title, and

(2) such individual is entitled to such month to—
(A) periodic benefits on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State, ...
the total of his benefits under section 423 of this title for such month and of any benefits under section 402 ... shall be reduced (but not below zero) by the amount by which the sum of
 (3) such total of benefits under sections 423 and 402 of this title for such month and
 (4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,
exceeds the higher of—
 (5) 80 per centum of his "average current earnings", or
 (6) the total of such individual's [Social Security disability benefits] prior to reduction under this section.

**3.** Defined at 20 C.F.R. § 404.408(c)(3). It is a method for calculating a worker's pre-disability earnings.

**4.** Section 223 of the Social Security Act, codified at 42 U.S.C. § 423. This opinion will use the U.S.C. citation for consistency with other cited code sections.

workers' compensation benefits and Social Security benefits takes home more money in disability payments than he or she did from working before the disability. Congress believed receiving double benefits would reduce the incentive of the worker to return to the job and would impede the rehabilitation efforts of the state programs. *Richardson v. Belcher*, 404 U.S. 78, 83, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971).

The calculation in the setoff statute is based on monthly earnings. However, the setoff statute also contemplates lump sum awards. *See* 42 U.S.C. § 424a(b).[5] A lump sum payment is not paid on a monthly basis and therefore does not figure neatly into the offset provision until converted into a monthly equivalence. When a person receives a lump sum workers' compensation payment that is meant as a substitute for periodic payments, there is an additional step required to convert the lump sum payment to a monthly equivalent. The Act instructs the Commissioner to treat a lump sum award that is paid as a substitute for periodic payments in such a way as to approximate as nearly as practicable the setoff that would have occurred had the payment been made periodically rather than in a lump sum. *Id.* The Act does not specify the amount of time for which the lump sum is a substitute. That is, the Act does not order the Commissioner to assume that the lump sum is a substitute for the payments the claimant would have received over his life expectancy, his expected work life, or any other time period. It simply states that the Commissioner should apply the setoff in such a way as to approximate the reduction that would have occurred had the workers' compensation payments been periodic.

The Act does not allow the Commissioner to take an offset if the workers' compensation award already offset Social Security.[6] This "reverse offset" provision exists to avoid double offset of benefits. *Swain v. Schweiker*, 676 F.2d 543, 547 (11th Cir.), *cert. denied*, 459 U.S. 991, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982). The Commissioner took the position that North Dakota workers' compensation law does not allow for offset of Social Security payments when workers' compensation is paid in a lump sum, and the Commissioner began reducing Frost's Social Security payments after receiving notification of the lump sum awards. The Commissioner determined that Frost had received $466.00 in overpayments (Tr. 80), took $20 out of his next benefit payment, and billed Frost $446.00 (Tr. 83). The Commissioner continues to assess an offset against Frost's current Social Security benefits. Frost filed this action to recover the offsets the Commissioner has taken against his Social Security payments and for a recalculation of his future payments.

Frost's complaint presents three issues: (1) whether the lump sum payments were commutations of or substitutes for periodic payments subject to offset; (2) whether § 424a(d)'s "reverse offset" provision applies to block the Commissioner's imposition of an offset; and (3) if the reverse offset does not block Social Security offset, whether the Commissioner calculated the offset properly by approximating as nearly as practicable the offset that would have occurred had the payments been made periodically. The final inquiry is important, because the longer the time period for which a lump sum payment is

---

**5.** 42 U.S.C. § 424a(b), "Reduction where benefits payable on other than monthly basis," states:

 If any periodic benefit for a total or partial disability under a law or plan described in subsection (a)(2) of this section [, i.e., workers' compensation,] is payable on other than a monthly basis (excluding a benefit payable as a lump sum except to the extent that it is a commutation of, or a substitute for, periodic payments), the reduction under this section shall be made at such time or times and in such amounts as the Commissioner of Social Security finds will approximate as nearly as practicable the reduction prescribed by subsec-

tion (a) of this section [,the section setting the 80% cap on combined benefits].

**6.** 42 U.S.C. § 424a(d), "Exception," states:

 The reduction of benefits required by this section shall not be made if the law or plan described in subsection (a)(2) of this section under which a periodic benefit is payable provides for the reduction thereof when anyone is entitled to benefits under the subchapter on the basis of the wages and self-employment income of an individual entitled to benefits under section 423 of this title, and such law or plan so provides on February 18, 1981.

considered a replacement, the smaller each "constructive payment" becomes, and thus the more Social Security benefits which will fit under the 80% cap.

## I. Lump Sums as Substitutes for Periodic Payments

### A. Permanent Partial Impairment Award

 Frost argues that the $9,600 award for permanent partial disability is not subject to the offset statute. The Act's offset provisions only apply to periodic payments, *see* 42 U.S.C. § 424a(a)(2)(A), and exclude lump sum benefits that are not a "commutation of, or a substitute for, periodic payments." 42 U.S.C. § 424a(b), (quoted *supra* at note 5). Frost contends that his permanent partial disability award was not a substitute for periodic payments. Whether a workers' compensation payment is a disability payment covered by § 424a(b) is a question of federal law, not state law. *Munsinger v. Schweiker,* 709 F.2d 1212, 1217 (8th Cir.1983). The state's characterization of a payment as a weekly or monthly benefit or as a nonperiodic benefit is not controlling, but this court must consider the state's workers' compensation system in order to determine the issue under federal law.

 Under the North Dakota workers' compensation system, benefits for permanent partial impairment compensate for loss of body function without regard to ability to work, while benefits for total disability compensate for lost wages due to inability to work. *Kroeplin v. North Dakota Workmen's Compensation Bureau,* 415 N.W.2d 807, 809 (N.D.1987), *Buechler v. North Dakota Workmen's Compensation Bureau,* 222 N.W.2d 858 (N.D.1974); *Cf. Gregory v. North Dakota Workmen's Compensation Bureau,* 369 N.W.2d 119, 121 (N.D.1985). The *Kroeplin* court noted that "in addition to affecting

earning power, parts of one's body serve personal and social purposes as well, and [ ] a worker should be compensated to some extent for those effects, other than occupational, from an injury which impairs a part of his body." *Kroeplin* at 809.

 The calculation of a North Dakota worker's benefits for a permanent impairment award considers neither the previous earning capacity of the person nor the duration of the injury. By definition, a permanent impairment will not abate. A permanent impairment award is made without regard to eligibility for or duration of a wage loss award. *Buechler* at 862. Instead, the workers' compensation statute considers the percentage of whole body impairment at the "date of maximum medical improvement." N.D. Cent.Code § 65–05–12 (1993). In this case, doctors had given Frost a 16% impairment rating. From this rating, the workers' compensation statute defines the award the claimant is to receive based on the "average weekly wage in this state rounded to the next highest dollar." *Id.* A 16% impairment, by statute, is equivalent to 80 "weeks" of salary.[7]

The settlement documents state that Frost received $9,600 based on 80 "weeks" of impairment. The Commissioner argues that the Bureau paid Frost for 80 weeks' worth of loss, and that this lump sum is therefore a substitute for 80 periodic payments. The court agrees with Frost that the North Dakota Legislature's use of the term "weeks" did not convert this award into a periodic payment. The state's use of the term "weeks" is not determinative of coverage by § 424a of the Act. *Munsinger,* supra. The North Dakota Legislature created a system of compensation for permanent impairment that adjusts the payment for inflation and other economic forces. The legislature could have used a cost of living formula or other

---

7. See Tr. 45. The Bureau appears to have calculated the 80 weeks of impairment based on N.D. Cent.Code § 65–05–12 (1993). That statute has been repealed and replaced with N.D. Cent.Code § 65–05–12.2 (1995). The effect of the change was to transform the scale from linear to progressive, but the significance of using "weeks" of an average salary to compute the award has not changed. The awards under the former statute

were computed at a constant rate of 5 weeks / percentage of impairment. That is the statute in effect when Frost's award was computed. *See Gregory v. North Dakota Workmen's Compensation Bureau,* 369 N.W.2d 119 (N.D.1985)(permanent impairment awards based on statutory rate in effect at time impairment determined). Hence, his 16% impairment was computed to be 16 times 5, or 80 "weeks."

**664**

such variable, but instead chose to tie the payment to the average salaries of the workers in the State of North Dakota. The term "weeks" in Frost's award for permanent partial impairment means nothing more than "dollars." Considering the purpose of permanent partial impairment awards under the North Dakota workers' compensation system, this court concludes as a matter of federal law that the $9,600 permanent impairment award was not "a commutation of, or a substitute for periodic payments." 42 U.S.C. § 424a(b). This award serves as "compensation for the loss of bodily function as contrasted to a substitute for periodic payments." *Campbell v. Shalala,* 14 F.3d 424, 427 (8th Cir.1994). The award is therefore not subject to Social Security offset.

**B. Temporary Total Disability Award**

■ While the first award was for partial permanent impairment, the second payment was in settlement for temporary total disability. (Tr. 50) The second settlement replaces the weekly disability payments Frost would have received while he was unable to work and clearly substitutes for periodic benefits. Under § 424a(b), the Commissioner must convert the lump sum into a stream of periodic payments, which requires the Commissioner to determine the period of time the payment was intended to replace.

The settlement documents state that the lump sum "is the equivalent of 90.74 weeks of temporary total disability benefits." (Tr. 50) The ALJ's finding that the Bureau and Frost genuinely meant 90.74 weeks when they specified that time period seems reasonable based on the record before him. Frost, however, argues that the award was never intended as a substitute for 90.74 weeks of wage loss benefits. Attached to Frost's brief is a letter written by his attorney to the Bureau contemporaneously with the settlement that suggests the reference to 90.74 weeks was not negotiated and has no significance. App. 4 to Plaintiff's Brief (Doc # 8). It simply represents the net amount of the temporary total disability award ($18,691.93) divided by Frost's presettlement weekly benefit ($206.00). The quotient is 90.74. Counsel's letter indicates the language about

equivalence with 90.74 weeks of benefits was placed in the settlement agreement to protect the Bureau and the employer in the event Frost demanded his job back with accommodations under the Americans with Disabilities Act. This letter is not part of the Social Security administrative record.

■ New evidence can result in a remand to the Commissioner only if the new evidence is material and there was good cause for the claimant's failure to include the evidence in the record of the original administrative proceedings. 42 U.S.C. § 405(g); *Woolf v. Shalala,* 3 F.3d 1210, 1215 (8th Cir.1993); *Geigle v. Sullivan,* 961 F.2d 1395 (8th Cir.1992). Since the new evidence here may help to explain the terms of the workers' compensation settlement, the letter is material evidence, but since the duration of the lump sum award's periodic substitution was clearly an issue before the ALJ, it is difficult to construe Frost's failure to present the letter during the administrative proceeding as anything but a miscalculation, which does not ordinarily amount to good cause. *Thomas v. Sullivan,* 928 F.2d 255, 260 (8th Cir.1991). However, in light of a misunderstanding about the workers' compensation reverse offset, discussed below, which will require reconsideration by the ALJ, this issue of the length of the substituted period of benefits should be reconsidered as well, in light of the new evidence.

**II. The Reverse Offset**

■ The Social Security offset does not apply if the state plan provides for a reduction in its benefits by reason of Social Security benefits. That is, if the workers' compensation system offsets its payments because of Social Security payments, the Social Security payments will not be reduced. Frost contends that the Bureau took an offset based on Social Security payments as part of his temporary total disability claim settlement. He argues that the reverse offset provision should apply to avoid double offset of his award.

The North Dakota offset provision, N.D. Cent.Code § 65–05–09.1, states in part:

When an injured employee, or spouse or dependent of an injured employee, is eligi-

ble for and is receiving permanent total or temporary total disability benefits under section 65–05–09, and is also eligible for, is receiving, or will receive, benefits under Title II of the Social Security Act [42 U.S.C. § 423], the aggregate benefits payable under section 65–05–09 must be reduced, but not below zero, by an amount equal as nearly as practical to one-half of such federal benefit.

The settlement document states that the above statute has been applied to the temporary total disability settlement to reduce the award. (Tr. 52) Frost contends that the Bureau did apply this offset provision in its calculation of the settlement amount. Frost states that the Bureau's true exposure for his lost time benefits was $57,680, less $25,200 through the state's offset of Social Security, for a net exposure of $32,480. Frost claims the Bureau considered the offset of Social Security in its settlement with Frost. Frost further points to a letter from the Bureau to the ALJ, in which the Bureau states that it did consider the Social Security offset when settling with Frost. (Tr. 99)

The Commissioner argues that North Dakota's workers' compensation law does not allow for offset when the award is in the form of a lump sum. The ALJ found that under the state offset provision quoted above, only awards under N.D. Cent.Code § 65–05–09 (weekly compensation) allow for offset, and that N.D. Cent.Code § 65–05–25 (lump sum) awards are not subject to offset. Therefore, the ALJ held that the reverse offset did not apply.

The court rejects the ALJ's interpretation of state law. The fact that the Bureau has the unilateral power to pay permanently disabled claimants the present value of their payments in no way affects the Bureau's ability to negotiate a settlement with a claimant. The statute has nothing to do with the Bureau's right to consider a Social Security offset when it negotiates a settlement of a claim under N.D. Cent.Code § 65–05–09.

Assuming the Bureau did exercise its authority to take a setoff based on Frost's Social Security payments, the court is convinced that the Commissioner may also reduce its payments to achieve a combined benefit level of 80% of predisability earnings. The justification for the Commissioner's setoff is found in Congress's intent to limit double recovery. *Sciarotta v. Bowen*, 837 F.2d 135 (3rd Cir.1988), is directly on point. In *Sciarotta*, the claimant was receiving Social Security benefits when he settled his New Jersey state workers' compensation claim and was paid a lump sum of $40,000. The court held that the Social Security payments could be reduced until the claimant was receiving only 80% of his pre-disability earnings in total benefits. *Id.* at 138. The claimant in *Sciarotta* made the same argument as Frost, that the literal wording of the reverse offset provision, 424a(d), prevents the Commissioner from taking any offset where the state workers' compensation benefits have already been reduced. The court concluded that the statutory history showed that Congress intended the offset provision to impose a ceiling on the total benefits an injured worker could receive. "Although the states are free to reduce their own payments to comply with that ceiling, the federal government can further reduce benefits if the state reduction is insufficient." *Id.* at 138.

A state is free to provide its injured workers with as much compensation as the state chooses, out of the state treasury. However, as long as the federal government contributes to those benefits, the federal government is free to determine the level of its own contribution. And the federal government has chosen to provide disability benefits only to the extent necessary to ensure that the injured worker's total benefits are equivalent to 80% of pre-disability income.

*Sciarotta* at 139. This court agrees and holds that 424a(d) does not prevent the Commissioner from taking an offset against Frost's lump sum temporary total disability award to the extent that the sum of the periodic workers' compensation benefit and Social Security benefit exceeds 80% of Frost's pre-disability income.

### III. Setoff Computation

■ The ALJ made an alternative finding that assuming *arguendo* the Workers' Compensation Bureau had the authority to apply

the state offset against a lump sum settlement, the amount of the offset was minimal and did not approach the level contemplated by N.D. Cent.Code § 65–05–09.1. The settlement agreement stated Frost and the Bureau had settled Frost's temporary total disability claim for "$20,000, less the Social Security offset in the amount of $1,308.07," for a net award of $18,691.93. The ALJ treated the $1,308.07 as the entire offset applied by the Bureau in the course of the settlement. A letter written by the Bureau to Frost, which is attached to plaintiffs brief, sheds a different light. (App. 2 to Plaintiffs Brief, Doc # 8). This letter indicates that the $1,308.07 offset was not an offset against the future benefits represented by the lump sum settlement. Rather, it was a recapture of overpayment in weekly temporary total disability benefits from the date Frost began receiving Social Security benefits to the date of the settlement. In other words, the Bureau retroactively applied the state's offset for past benefits. The $1,308.07 was clearly not intended as an offset against the lump sum settlement of future benefits.

The ALJ's treatment of the $1,308.07 was not unreasonable given the record before him. The letter which explains the reason for this reduction was not included in the administrative record. Because the issue of recapture of offset against past weekly benefits was not an issue presented to the ALJ, Frost apparently did not anticipate how the ALJ would construe the $1,308.07 in the context of the settlement. The court finds that the Bureau's letter to Frost is material new evidence which Frost had good cause not to include in the original administrative record. 42 U.S.C. § 405(g); *Thomas v. Sullivan*, 928 F.2d at 260.

This matter must be remanded for reconsideration by the ALJ of the extent of any offset taken by the Bureau in reaching the settlement of Frost's temporary total disability claim. If the ALJ finds that the state's offset was fully considered in reaching the $20,000 settlement, there may be little or no

Social Security offset to be taken to achieve a combined benefit level of 80% of Frost's pre-disability earnings.

The true nature of the $1,308.07 reduction from the settlement also creates another factual anomaly that may not have been previously apparent. The 90.74 weeks mentioned in the temporary total disability settlement provision was reached by dividing the net settlement payment of $18,691.93 [8] by $206.00, the amount Frost had been receiving as a weekly temporary total disability benefit. Since the $18,691.93 was really not the amount of the settlement, only the net payment after recapture of the past overpayment, the assumption that the settlement truly did represent a substitute for 90.74 weeks loses credibility. Also, the uneven number of weeks cited in the agreement in itself lends credence to Frost's argument that the reference to 90.74 weeks was a fiction built into the settlement after the fact to protect Frost's former employer and the Bureau. *See* App. 4 to Plaintiffs Brief (Doc # 8).

If the ALJ concludes the record is not clear as to whether Frost and the Bureau intended the total disability settlement to replace 90.74 weeks of work loss benefits, the ALJ should consider whether the settlement should be converted to a stream of payments over Frost's work life expectancy, not his life expectancy as urged by plaintiff. *See Hodge v. Shalala*, 27 F.3d 430, 434 (9th Cir.1994); *Sciarotta*, 837 F.2d at 141 n. 10.

### IV. Conclusion

This matter is remanded for a recalculation of any offset against Frost's Social Security benefits. This court reverses the decision of the Commissioner in part and holds that the $9,600 permanent impairment award is not a substitute for periodic benefits and thus is not subject to offset under 42 U.S.C. § 424a(b). On remand, the ALJ shall make findings in light of additional evidence on the issues of the amount of any offset by the Workers' Compensation Bureau that was factored into Frost's temporary total disability

---

**8.** The court recognizes that Frost actually received $18,824.77. This discrepancy is not explained in the record. The court assumes the difference simply represented accrued and yet unpaid weekly wage loss benefits.

settlement, the term of periodic benefit for which the lump sum total disability settlement was intended to substitute, and the amount of any § 424a(b) offset, if any, to be taken against Frost's Social Security benefit in light of the approximated monthly workers' compensation benefit for lost time under the settlement.

Because the remand will involve consideration of new evidence, the court remands under sentence six of 42 U.S.C. § 405(g) and retains jurisdiction in the matter.

IT IS SO ORDERED.