Edwin LUITHLE, Appellee,

v.

**BURLEIGH COUNTY SOCIAL SERVICES, Respondent,**

and

**North Dakota Department of Human Services, Appellant.**

**Civ. No. 910007.**

Supreme Court of North Dakota.

Aug. 16, 1991.

David Boeck (argued), Legal Assistance of North Dakota, Bismarck, for appellee.

Sidney J. Hertz Fiergola (argued), Asst. Atty. Gen., Bismarck, for appellant.

ERICKSTAD, Chief Justice.

The North Dakota Department of Human Services [the Department] appealed from a district court judgment reversing the Department's denial of medical assistance benefits to Edwin Luithle. We affirm the judgment.

On April 14, 1988, Edwin, disabled and living in a nursing home, applied for medical assistance benefits through the Burleigh County Social Service Board [the Board]. Edwin was advised that he was ineligible for benefits because he owned assets in excess of the $3,000 resource limit, specifically a life estate in a ⅔ths interest in 320 acres of farmland. It is apparently conceded that, other than this life estate, Edwin's resources fell under the $3,000 limit.

The Board advised Edwin that he could establish his eligibility for benefits by demonstrating that the property was not salable without working an undue hardship, in accordance with Section 75–02–02–03.1(10), N.D.A.C.:

> "10. 'Property which is not salable without working an undue hardship' means property which the owner has made a good faith offer to sell which has produced no buyer willing to pay an amount equaling or exceeding seventy-five percent of the property's fair market value, and which is continuously for sale."

Property which is not salable without working an undue hardship is excluded in determining available resources. Section 75–02–02–23(2), N.D.A.C.

In an effort to comply with the Board's directives and regulations, Edwin's brother Eugene, acting as Edwin's attorney-in-fact, advertised the life estate for sale in May 1988. No offers were received. The Board, concluding that this effort to sell the property did not technically comply with the regulations, advised Edwin that he still was ineligible for benefits. Finally, in July 1988 a technically correct advertisement was placed, listing the life estate for sale at seventy-five percent of its value, as determined by the Board. Again, no offers were received. The Board then agreed that the life estate was not salable without working an undue hardship. A second application for benefits was subsequently filed, and Edwin received benefits calculated from July 1, 1988. The Board refused, however, to allow benefits for the months of April, May, and June of 1988.

Edwin had appealed the original denial of benefits to the Department. Thus, while attempts were being made to sell the property, the appeal process was proceeding. A hearing was held on July 18, 1988. On August 22, 1988, the Department issued its decision affirming the Board's denial of benefits. In reaching its conclusion, the Board refused to consider any evidence relating to events after the April 25 denial, including the advertisement and attempted sale of the property. Edwin's request for a rehearing was denied.

Edwin appealed to the district court. While the appeal was pending, the Department moved for an order remanding the case for reconsideration in light of *Falcon v. Williams County Social Service Board*, 430 N.W.2d 569 (N.D.1988). In *Falcon*, under markedly similar circumstances, we held that the Department was required to consider evidence of an attempted sale of the property which occurred after the denial by the county social service board but prior to the hearing before the Department.

Upon remand in this case, the Department held that an offer to sell the property is a "chronological" prerequisite to exclusion under Section 75–02–02–23(2), N.D.A.C. The Department reasoned that, because the property was not offered for sale in a technically correct manner until July, 1988, Edwin had failed to establish eligibility for the months of April, May, and June.

Edwin requested a rehearing to present evidence that the life estate was not salable in April, May, and June. The Department denied the request, taking the position that evidence of market conditions in prior months was irrelevant because nonsalability could only be established by an offer to sell the property in accordance with Section 75–02–02–03.1(3), N.D.A.C.

Edwin then filed with the district court specifications of error upon remand. The district court concluded that proof of nonsalability in July related back to the date of the application and held that Edwin was entitled to benefits from the date of his original application. Judgment was entered accordingly, and the Department appeals.

The following issues are dispositive on appeal:

I. Did the district court have jurisdiction?

II. Does proof that Edwin's life estate was not salable in July establish entitlement to benefits for April, May, and June?

## I.

■ The Department asserts that the district court was without jurisdiction after the remand to consider Edwin's appeal. Edwin did not file a separate notice of appeal from the Department's decision on remand, but filed a document entitled "Specification of Errors After Remand." The Department asserts that the district court lost jurisdiction of Edwin's appeal when it remanded to the Department for reconsideration, and that Edwin was required to file a new notice of appeal from the decision on remand to again invoke the district court's appellate jurisdiction.

The motion for remand to the Department was precipitated by *Falcon* and its requirement that evidence of offers to sell the property made after denial of the original application must be considered by the Department. Accordingly, the remand in this case was pursuant to Section 28–32–18, N.D.C.C., as in effect at the relevant time [1]:

> "28–32–18. *Consideration of additional or excluded evidence.*—If an application for leave to adduce additional evidence is made to the court in which an appeal from a determination of an administrative agency is pending, and it is shown to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing or proceeding had before the administrative agency, or that such evidence is material to the issues involved and was rejected or excluded by the agency, the court may order that such additional evidence be taken, heard, and considered by such agency on such terms and conditions as the court may deem proper. After considering such additional evidence, the administrative agency may amend or modify its findings of fact, conclusions of law, and decision, and shall file with the court a transcript of such additional evidence together with its new or modified findings of fact, conclusions of law, and decision, if any."

Section 28–32–18 clearly envisions that the district court retains jurisdiction while the matter is remanded to the agency for reconsideration. The statute specifically requires that the agency file a transcript of any additional evidence and any amended findings, conclusions, or decision with the district court. If, as the Department asserts, the district court had lost jurisdiction and a new notice of appeal was necessary to reinvoke the court's appellate jurisdiction, the requirement that the new evidence and amended findings, conclusions, and decision be filed with the district court would be meaningless. "The law neither does nor requires idle acts." Section 31–11–05(23), N.D.C.C.

The Court of Special Appeals of Maryland has so construed that state's similar statute:

> "This section does not require a complete remand of the case to the administrative agency, but rather it anticipates a referral for the receipt of additional evidence with an opportunity for the agency to modify its findings or decision. The circuit court remains a 'reviewing court,' and the section clearly requires the agency to submit the additional evidence to the court along with its modifications, if any. The APA contemplates that the circuit court, while ordering additional evidence to be received by the agency, retains continuing jurisdiction over the appeal. After the agency has completed its action, the circuit court may then proceed with its consideration of the appeal on the merits."

*Breedon v. Maryland State Department of Education*, 45 Md.App. 73, 411 A.2d 1073, 1081 (1980). *See also Hickory Hills Limited Partnership v. Secretary of State*, 84 Md.App. 677, 581 A.2d 834, 836–837 (1990).

We conclude that the language of Section 28–32–18, N.D.C.C., evinces a clear legislative intent that the district court retain jurisdiction when the matter is remanded for the limited purpose of consider-

---

1. The 1991 Legislative Assembly amended Section 28–32–18, N.D.C.C., effective July 1, 1991.

*See* 1991 N.D.Sess.Laws ch. 342, § 25.

ing additional, rejected, or excluded evidence. Accordingly, the district court properly exercised jurisdiction in this case.

## II.

■ The Department asserts that it properly applied the relevant regulations in concluding that Edwin was not entitled to benefits for April, May, and June, 1988. The district court disagreed, holding that those regulations require that Edwin's eligibility be related back to the date of his original application.

As previously noted, Section 75–02–02–23(2), N.D.A.C., provides that property which is not salable without working an undue hardship is to be excluded in determining an applicant's available resources. Section 75–02–02–03.1(10), N.D.A.C., defines "[p]roperty which is not salable without working an undue hardship" as property which the owner has attempted to sell and which has produced no buyer willing to pay seventy-five percent of the fair market value. The Department argues that this mandates that an applicant cannot be considered eligible for benefits for any month prior to the attempted sale of the property.

The Department, however, virtually ignores Section 75–02–02–05(1), N.D.A.C., which governs eligibility determinations and provides, in pertinent part:

"1. Individuals found eligible for medical assistance will qualify for assistance, beginning at least with the date of application, and if determined eligible, eligibility may begin in or after the third month prior to the month of application provided that eligibility existed at the time medical services prior to application were received."

The Department in its brief argues that this section provides only that "where eligibility is found during the month of application, and the applicant meets the eligibility criteria for benefits in the three months preceding the application, benefits are available for those months." The regulation, however, does much more than merely provide the three-month pre-application retroactivity noted by the Department. It also provides that a finding of eligibility relates back "at least" to the date of application.

The Department asserts that the relation-back provision does not apply to eligibility based upon proof that the property was not salable. At oral argument, the Department conceded that the effect of its interpretation of the regulations is that, in virtually every case, eligibility for benefits will be delayed while the applicant goes through the process of advertising the property for sale, waiting for offers, and then reapplying for benefits. This result is not consistent with Section 75–02–02–05(2), N.D.A.C., which requires that services will be furnished promptly without delay attributable to the Department's administrative processes, and that those administrative processes must be "efficient and in the best interests of the recipient."

The interpretation urged by the Department places an applicant such as Edwin in a bureaucratic paradox. Although the life estate is in reality not salable, there is no way he can establish that fact without going through the various steps of the Department's mandated administrative process. He must first apply for benefits and be turned down. Then he is advised by the Department of their calculation of the value of the life estate. Then he must advertise it for sale at seventy-five percent of that value, wait a specified period of time for offers, and then either reapply for benefits or present evidence of the attempted sale at an administrative hearing on appeal from the original denial. Then, finally, he will be awarded benefits, but only from the date of the attempted sale.

The applicant under the Department's construction of its process is given no opportunity to prove that the life estate, or other asset, was in fact not salable at the time of the original application. We do not conceive this construction of the Department's procedure to be reasonable.

Properly promulgated rules of an administrative agency have the force and effect of law. Section 28–32–03(3), N.D.C.C. Although we ordinarily accord deference to an administrative agency's interpretations

of its own regulations, that deference is not absolute:

"While an administrative agency is certainly bound by its own duly issued regulations ... an agency nevertheless has a reasonable range of informed discretion in the interpretation and application of its own rules.... Thus, courts generally defer to an agency's reasonable interpretation when the language is so technical that only a specialized agency has the experience and expertise to understand it or when the language is ambiguous.... No deference is called for when the regulating language is clear." *Matter of Stone Creek Channel Improvements*, 424 N.W.2d 894, 900 (N.D.1988) [citations omitted].

The interpretation urged by the Department in this case creates a built-in delay in the award of benefits to needy persons. It places administrative expediency ahead of factual need, exalts form over substance, and ignores the Department's mandate to provide administrative processes which are efficient and in the best interests of the applicant. We conclude that the Department's interpretation of its regulations is unreasonable, and thus its decision is not in accordance with the law as embodied in the administrative rules.[2] *See* Section 28–32–19, N.D.C.C.

The result in this case was clearly foreshadowed in *Falcon*. Falcon's medical assistance benefits were terminated when the Williams County Social Service Board learned that he owned a life estate in certain property. Falcon requested a hearing and, before the hearing, advertised the life estate for sale. Falcon offered evidence of the attempted sale at the hearing, but the Department held that it would not consider evidence of nonsalability because that was not an issue in the denial of the original application.

On appeal we reversed, holding that the Department was required to consider evidence of nonsalability even though the attempted sale occurred after the initial denial of benefits. We noted that this evidence was "relevant to the determination made by the Williams County Social Service Board as to termination of his medical assistance benefits due to excess resources." *Falcon, supra*, 430 N.W.2d at 573. We also stressed that the "hearing was actually the first opportunity Falcon had to offer evidence as to the salability without hardship which he had now learned to be crucial to his continued receipt of medical benefits." *Falcon, supra*, 430 N.W.2d at 573.

The clear import of our holding in *Falcon* was that evidence of a subsequent attempted sale was relevant in assessing whether the decision to terminate benefits was correct. Of necessity, that means that the subsequent showing of nonsalability would relate back to the date of termination of benefits. This is especially borne out by our observation that the hearing is the first opportunity the claimant has to produce evidence of nonsalability.

We conclude that the applicable regulations, read in light of our holding in *Falcon*, require that the Department consider evidence of nonsalability offered at the hearing and, if eligibility is proved based upon nonsalability, eligibility relates back to the date of the application. The district court judgment reversing the denial of benefits is affirmed.

LEVINE, VANDE WALLE, MESCHKE and GIERKE, JJ., concur.

---

**2.** It appears that the interpretation of the regulations by the various governmental agencies involved was not entirely consistent. In letters to Eugene Luithle advising him of the denial of benefits and the requirements for establishing nonsalability of the life estate, representatives of the Burleigh County Social Service Board stated that if the life estate was not salable benefits would be granted from April 1, 1988.