Esther HAKANSON, Appellee,

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellant,**

and

**Benson County Social Services Board, Respondent.**

Civ. No. 910270.

Supreme Court of North Dakota.

Jan. 9, 1992.

Sidney J. Hertz Fiergola, Asst. Atty. Gen., Bismarck, for appellant.

Duane Houdek, Legal Assistance of North Dakota, Bismarck, for appellee.

ERICKSTAD, Chief Justice.

The North Dakota Department of Human Services appeals from the judgment of the District Court for Benson County, reversing the department's decision denying Esther Hakanson medical assistance. We reverse the district court judgment and remand to the department.

Sometime in 1983, Esther and Victor Hakanson transferred their interest in farmland to their children, reserving a life estate. On October 9, 1986, the Hakansons first applied for medical assistance from the Benson County Social Service Board. Their application was denied because they had excess available resources in the life estate. The Hakansons did not appeal the denial of this first application. On April 2, 1987, the Hakansons quitclaimed their life interest in the property to their children, for the consideration of one dollar. On March 13, 1990, Esther Hakanson made a second application for medical assistance benefits. On May 17, 1990, this second application was denied because the transfer of their life estate was a disqualifying transfer under section 75–02–02–25, N.D.Admin.Code.[1] Esther subsequently appealed from the Benson County Social Service Board for administrative review. After a hearing held on November 6, 1990, before Robert Brady, the department adopted the hearing officer's recommended findings affirming the action taken by the Benson County Social Service Board denying Esther medical assistance. Esther appealed to the district court which reversed the decision of the agency and held: (1)

---

1. Much of Chapter 75–02–02, N.D.Admin.Code, has been repealed and replaced with Chapter 75–02–02.1 effective December 1, 1991. Although not relevant to the disposition of this case we note the following:

"75–02–02.1–32. Valuation of assets. It is not always possible to determine the value of assets with absolute certainty, but it is necessary to determine a value in order to determine eligibility. The valuation must be based on reasonably reliable information. It is the responsibility of the applicant or recipient, or the persons acting on behalf of the applicant or recipient, to furnish reasonably reliable information. However, ... some verification of value must be obtained. Useful sources of verification include, but are not limited to:

\* \* \* \* \* \*

3. Real property.
a. With respect to surface interests: *market value or 'true and full' value from tax records,* whichever represents an approximation of fair market value; real estate agents; appraisers; loan officers in local banking institutions. If a valuation from a source offered by the applicant or recipient is greatly different from fair market value established by tax records, an explanation for the difference must be made....

\* \* \* \* \* \*

4. Divided or partial interests....

\* \* \* \* \* \*

c. Life estates and remainder interests.

\* \* \* \* \* \*

(4) Life estate and remainder interest tables. *These tables must be used to determine the value of a life estate or remainder interest....*

75–02–02.1–33. Disqualifying transfers.

\* \* \* \* \* \*

2. a. An individual found ineligible as a result of a disqualifying assignment or transfer will remain ineligible until the individual becomes legally obligated to pay for medical expenses, *not paid for by any other third party....* [Emphasis added.]"

Thus, many of the issues raised by Esther Hakanson in this case will be addressed by the newly promulgated rules in future cases.

that the department's use of the full and true value was not supported by the evidence; (2) that the use of the remainder interest tables to calculate the values of the life estate was improper in that the tables hadn't been promulgated as an administrative rule; and (3) that the department's interpretation of its rule, such that a person must incur out-of-pocket expenses not covered by insurance equal to the disqualifying transfer, was not reasonable. This appeal by the department followed.

Initially, we note that when this Court reviews an administrative agency's decision, we review the decision of the agency and not that of the district court. *Midwest Property Recovery, Inc. v. Job Service of North Dakota*, 475 N.W.2d 918, 920 (N.D.1991); *Skjefte v. Job Service North Dakota*, 392 N.W.2d 815 (N.D.1986). We limit our review to the record before the agency and do not consider the findings of the district court. *Asbridge v. North Dakota State Highway Commissioner*, 291 N.W.2d 739, 743 (N.D.1980). Furthermore, "[t]he final decision of [the Department of Human Services] was made by its Executive Director and it was from his decision that [Esther] appealed to the district court. Consequently, we review the decision of the Executive Director to determine whether [Esther] has raised an appropriate ground for reversal of the agency's determination." *Speedway, Inc. v. Job Service North Dakota*, 454 N.W.2d 526, 528 (N.D.1990).

Sections 28–32–21 and 28–32–19, N.D.C.C., set forth the scope and procedure for this Court's review of administrative agency decisions.[2] We will affirm an administrative agency decision unless one of the six enumerated reasons for not affirming the agency listed in section 28–32–19 is found to exist. *In re Annexation of Part of Donnybrook Public School District No. 24*, 365 N.W.2d 514, 519 (N.D.1985). We have noted that our review under section 28–32–19, N.D.C.C., essentially involves a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? *Falcon v. Williams County Social Service Board*, 430 N.W.2d 569, 571 (N.D.1988). "In determining whether or not the agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could reasonably have determined that the factual conclusions were supported by the weight of the evidence." *Id. Power Fuels Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979).

As part of her second application for medical assistance, Esther introduced an independent appraisal of the underlying farmland in question. This appraisal was done by Dennis Larson, Esther's daughter's brother-in-law. Apparently unknown to Esther, Larson, or Barb Arndt, the eligibility specialist in charge of Esther's application, the appraisal turned out to be incomplete.[3] After receiving the appraisal, Arndt sent it to Bismarck to be reviewed by counsel for the Department of Human Services. Assistant Attorney General, Blaine Nordwall reviewed the appraisal and concluded it was not credible.[4] Because of

2. *See Falcon v. Williams County Social Service Board*, 430 N.W.2d 569 (N.D.1988), for a discussion of the applicability of the Administrative Agencies Practice Act, Chap. 28–32, N.D.C.C., to decisions of local county social service boards as part of the Department of Human Services.

3. Larson later submitted an updated appraisal which included land he had failed to include and pasture land for which he had failed to place a value.

4. In his letter to Arndt, Nordwall stated in relevant part:

"Included with the materials furnished by Mrs. Arndt was an appraisal report. That report concludes the value of the property, less two lots which are not described in the appraisal, as $39,300. The appraised value is slightly less than one third of the true and full value. It does not appear that the appraisal was secured in contemplation of a sale of the land or in contemplation of borrowing, even though the appraisal report is produced on a Form FmHA 422–1, usually used as part of a loan application. I make that observation because the applicant's name is given as Victor & Esther Haakenson, and they had not

Nordwall's views and the fact that the appraisal reflected current market prices as opposed to prices at the time the land was transferred, Arndt used the full and true value for tax assessment purposes in valuing the land in question.

At the administrative hearing, Esther introduced Larson's updated appraisal as well as an appraisal by Lester Lien. Esther also offered figures showing complete and up-to-date medical expenses that had been incurred. Additionally, Ellen Huffman with the county tax office testified that true and full value for tax assessment purposes was not always reflective of market price.

█ In the hearing officer's recommended findings we find the following relevant discussion:

> *"1. Benson County Social Services' use of the 'true and full value' developed for taxation purposes ... was not inappropriate or erroneous.*
>
> Basis for hearing officer's finding: ... Given the fact that the only other figure the county staff had to work with was an admittedly incomplete appraisal of $39,-300, prepared by a family member, the county's decision to rely on the true and full value obtained from the tax office was not unreasonable.

> \* \* \* \* \* \*

> *"4. Even if the appraisal prepared by Lester Lien, ... might be accepted as fair and reliable, Esther Hakanson has not demonstrated eligibility for Medical Assistance.*
>
> Basis for hearing officer's finding: Several months after the denial of the application that is the subject of this appeal, the family hired Lester Lien, a certified real estate appraiser, to prepare an appraisal of the farmland. Mr. Lien came in with a figure of $84,800. While this figure is but seventy percent of the 'full

and true value' of the property for tax assessment purposes, the appraisal appears to have been arrived at by the application of generally accepted appraisal procedures and methods. When the life estate and remainder interest tables used by the Medical Assistance program to determine the value of life estates are applied, a value of $25,539 is obtained [$84,800 × .30117 (the decimal figure used for an 80 year old female)]. The hearing evidence offered with respect to medical expenses for which the assistance unit has become obligated for shows a total of $18,748.38 through May of 1990, when the action under appeal was taken. However, it appears that that total had increased to $30,500.33 through September of 1990. Thus, it would. appear *that should an application again be made, and the $84,800 appraisal by Lester Lien be found acceptable by the county office, eligibility could possibly be established.* How far retroactively such eligibility might be established would also depend upon the value of other non-exempt resources which the county apparently has not previously had reason to look at. [Emphasis added.]"

Notwithstanding its disagreement with the district court's judgment, the department agrees that this case must be remanded so that the new figure of $30,-500.33 may be considered without requiring a reapplication for medical assistance benefits. *See Falcon v. Williams County Social Service Board,* 430 N.W.2d 569; *Luithle v. Burleigh County Social Services,* 474 N.W.2d 497 (N.D.1991). However, the department argues that the hearing officer's findings and implicit findings should be upheld regarding its use of the tax assessed value, the use of the remainder interest tables, and its interpretation of

owned any interest in the property for nearly two years prior to the date of appraisal. Accordingly, I conclude that the appraisal was secured by the applicants solely for the purpose of attempting to demonstrate eligibility for benefits. Inasmuch as the appraised value is so far removed from the true and full value, I conclude that the appraisal is not credible."

We recognize that many people like Esther have no other way of demonstrating what the "fair market value" of the land in question is other than by obtaining an appraisal solely for this .purpose. The fact that an appraisal was obtained solely for the purpose of qualifying for benefits alone cannot make such an appraisal incredible.

its rule requiring an applicant to incur out-of-pocket medical expenses after insurance equal to the value of the disqualifying transfer, in order to overcome such a disqualifying transfer.

■ The department first argues that its decision to use the "true and full value" in assigning a value to the Hakanson farmland should be upheld. Under North Dakota Administrative Code section 75–02–02–25(1), in effect at the time of the hearing before the department hearing officer, when there has been a disqualifying transfer, "[a]n amount equal to the *fair market value* of the property transferred will be treated as though the assignor or transferor had retained the property. [Emphasis added.]" The department asserts that use of the tax assessment value is not unreasonable and that in many cases that value may be the only resource available in assigning a value.

We agree that it is not unreasonable to use the "true and full value" used for tax assessment purposes as *evidence* in assigning a value.[5] It should not be the exclusive requirement. In this case, it does not appear from the hearing officer's recommended findings that a specific value was assigned to the Hakanson farmland. Accordingly, on remand to the department, all evidence should be considered and weighed and a decision rendered on this issue.

■ Next the department argues that it properly valued the life estate interest. More specifically, the department argues that its use of the remainder interest tables was not inappropriate.[6] Esther argues that use of the remainder interest tables was inappropriate in that they were not properly promulgated as an administrative rule pursuant to the Administrative Agencies Practice Act. We have on a number of occasions discussed when an agency procedure must be promulgated as an administrative rule. *See e.g., Illies v. Illies,* 462 N.W.2d 878 (N.D.1990); *Mullins v. North Dakota Department of Human Services,* 454 N.W.2d 732 (N.D.1990); *Johnson v. North Dakota Workers Compensation Bureau,* 428 N.W.2d 514 (N.D.1988); *see also Kroeplin v. North Dakota Workmen's Compensation Bureau,* 415 N.W.2d 807, (N.D.1987) (VandeWalle, J., concurring in result).[7, 8] In this case, Esther did not

5. "True and full value" for tax assessment purposes is obtained through a statutory process contained in part in section 57–02–27.2, N.D.C.C.

6. At oral argument, counsel for the department asserted that the department would consider other evidence of value of the life estate other than from the remainder interest tables. In this sense, the department argues that the tables are merely evidentiary in nature.

7. In *Kroeplin v. North Dakota Workmen's Compensation Bureau,* the majority of this Court considered the authority of the Bureau to adopt the American Medical Association's Guides to the Evaluation of Permanent Impairment. Justice VandeWalle, concurring in the result reached by the majority noted the following:
 "Section 65–02–08 authorizes the Bureau to 'make, promulgate, and enforce such rules, not inconsistent with the provisions of this title, as may be necessary to carry out the provisions of this title.' However, those rules must be made and promulgated, if they are to be effective, pursuant to Chapter 28–32, N.D.C.C., the Administrative Agencies Practice Act. As the majority opinion notes at footnote 1 thereof, these guidelines were not adopted pursuant to Chapter 28–32, nor do they appear exempt from that procedure by

virtue of Section 28–32–01(6). It appears to me that the adoption of such a significant and substantive standard for a claimant to meet must be accomplished by more than the mere issuance of an informal 'directive,' i.e., it must be adopted in accordance with the formal rule-making power given the Bureau pursuant to Section 65–02–08 and Chapter 28–32, N.D.C.C."
415 N.W.2d at 810, 811.

8. We note that section 28–32–01(6), N.D.C.C., as it existed at the time of Esther's application for medical assistance has subsequently been amended (and renumbered as 28–32–01(11)) as follows, in part:
 "6. 'Rule' means the whole or a part of an agency statement of general applicability that implements, interprets, or prescribes law or policy, or the organization, procedure, or practice requirements of the agency. The term includes the amendment, repeal, or suspension of an existing rule. The term does not include:
 a. A rule concerning only the internal management of an agency which does not directly or substantially affect the substantive

attempt to introduce evidence of alternative value of the life estate for the department to consider. Thus, the record before us does not adequately disclose the scope and effect the department would have given the remainder interest tables. It does not disclose that the department would have relied solely on the tables had other evidence been introduced. Until we are clearly presented with that issue, we will postpone determining whether or not utilizing such tables with or without other evidence requires compliance with the rulemaking process of the Administrative Agencies Practice Act. On remand to the department, Esther may offer other competent evidence of the value of the life estate.

 Lastly, the department argues that before a person can overcome a disqualifying transfer and become eligible for benefits, he or she must incur out-of-pocket medical expenses after insurance equal to the disqualifying transfer. Relevant is North Dakota Administrative Code section 75–02–02–25 which read in part:

"An assignment or transfer of a nonexempt property, for less than adequate consideration, whenever made with the intent to render the assignor or transferor, or a family member, eligible for medical assistance benefits, produces ineligibility. An amount equal to the fair market value of the property transferred will be treated as though the assignor or transferor had retained the property. An individual found ineligible as a result of a disqualifying assignment or transfer will remain ineligible *until he becomes obligated for medical expenses* equal to the difference between the fair market value of the property and the amount of compensation actually received. [Emphasis added.]"

The department asserts that its interpretation of the phrase "obligated for medical expenses" is reasonable. We note that an administrative agency's interpretation of its own rules is entitled to some deference. *See Matter of Stone Creek Channel Improvements* 424 N.W.2d 894, 900 (N.D. 1988) ("an agency ... has a reasonable range of informed discretion in the interpretation and application of its own rules."). A contrary interpretation in this case would not treat the transferor as if he had retained the asset. Presumably, when a disqualifying transfer has not been made, the property in question would be an available asset rendering the owner ineligible for medical assistance until actual out-of-pocket medical expenses consume the asset or at least up to the point where the balance of the asset is exempt from consideration by the department. We thus conclude that the department's interpretation of section 75–02–02–25, N.D.Admin.Code, such that a person must incur out-of-pocket medical expenses after insurance, equal to the disqualifying transfer, is reasonable.[9]

For the aforementioned reasons, the judgment of the district court is reversed and this case is remanded to the department for appropriate action consistent with this opinion.

---

or procedural rights or duties of any segment of the public.

\* \* \* \* \* \*

~~k. Interpretive statements, general statements of policy; or statements of agency organization, procedure, or practice.~~

~~l. Guidelines, manuals, brochures, pamphlets, and similar statements of policy intended to advise or guide the agency or the public concerning activities of the agency which are otherwise prescribed by rule or statute.~~

~~m. Statements of policy intended to implement federal statutes, rules, or requirements with which compliance by the agency is revenues, or to avoid the loss of otherwise available federal revenues.~~

~~n. A contract.~~ *Any material, including a guideline, interpretive statement, statement of general policy, manual, brochure, or pamphlet, that is merely explanatory and not intended to have the force and effect of law."* S.L.1991, ch. 343, § 1.

**9.** Esther has not referred us to any authority that suggests, nor has she argued with any degree of specificity, that the agency's interpretation of its rule is in any way violative of any controlling law, or that it is without statutory authorization (*e.g.* 42 U.S.C. § 1396 et seq., ch. 50–24.1, N.D.C.C.). *See Moore v. North Dakota Workmen's Compensation Bureau,* 374 N.W.2d 71 (N.D.1985); *Steele v. North Dakota Workmen's Compensation Bureau,* 273 N.W.2d 692 (N.D.1978).

VANDE WALLE, LEVINE and MESCHKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Judge, sitting with the Court due to the resignation of the Honorable H.F. GIERKE III, as of November 20, 1991.

MESCHKE, Justice, concurring.

I join in the opinion by Chief Justice Erickstad. I write separately only to call attention to related statutes that reinforce the holding on the third point about interpreting NDAC 75–02–02–25. Federal law provides that a state administering a medical assistance plan "will take all reasonable measures to ascertain the legal liability of third parties (including health insurers) to pay for care and services available under the plan...." 42 U.S.C. § 1396a (a)(25)(A). State law requires each applicant for medical assistance to apply all proceeds received or receivable by him or her or his or her eligible spouse from private health care coverage to the costs of medical care; and, the Department may require an assignment of rights accruing under any private health care coverage. NDCC 50–24.1–02(2). The department's interpretation of the phrase in the regulation, "obligated for medical expenses," is therefore reasonable.

VANDE WALLE and LEVINE, JJ., concur.