**AMERICANA HEALTHCARE CENTER, Appellee,**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellant.**

Civ. No. 950086.

Supreme Court of North Dakota.

Nov. 30, 1995.

152

Carol Ronning Kapsner (argued), of Kapsner & Kapsner, Bismarck, for appellee.

Candace A. Prigge (argued), Assistant Attorney General, Attorney General's Office, Bismarck, for appellant.

NEUMANN, Justice.

The North Dakota Department of Human Services [Department] appeals from a district court judgment reversing the Department's order disallowing certain interest expenses in setting 1993 reimbursement rates for Americana Healthcare Center [Americana]. We reverse the judgment of the district court and affirm the Department's order.

Americana is a nursing home located in Fargo. At the time relevant to this case, Mid–States Nursing Home Corporation [Mid–States] owned the land and buildings where Americana was located. University Manor Corporation [University] operated the facility, and University had an option to purchase the property from Mid–States. Both Mid–States and University were wholly owned subsidiaries of Manor Healthcare Corporation [Manor].

Sunnycrest Nursing Facilities, Inc. [Sunnycrest], an unrelated corporation, held an option to purchase all of the shares of Mid–States. On September 25, 1983, Sunnycrest gave notice of its intention to exercise the option.

Concerned that Sunnycrest, as owner of Mid–States, might encumber the property occupied by Americana, University exercised its option to purchase the property from Mid–States on September 29, 1983. The property was transferred to University, and University issued to Mid–States a promissory note for $622,422.16, to be paid over 20 years at 10 percent interest. At the time of this transaction, Mid–States and University were still owned by Manor. However, no payment was made on the note while the parties were still related.

Sunnycrest exercised its option on October 14, 1983, acquiring Mid–States and, with it, University's note. Sunnycrest and Manor entered into negotiations which culminated in a refinancing in June 1984. To cancel University's note, Manor paid $157,532.68 to Sunnycrest and gave a new note for $562,000 at 12 percent interest. In 1986, Manor issued public debentures at 6 3/8 percent interest and paid off the 1984 note to Sunnycrest.

In its 1991–1992 cost report to the Department, Manor claimed an interest expense of $36,450 on the debentures related to the Mid–States refinancing. The Department audited Manor's expenses and disallowed the $36,450 interest expense because the original September 29, 1983 transaction had been between related parties. The Department adjusted Americana's 1993 reimbursement rate to reflect disallowance of the interest expense.

Americana's request for reconsideration was denied, and Americana appealed its final rates for 1993. Following an administrative hearing, the hearing officer issued his recommended findings and order concluding that, if interest on the debentures was paid to unrelated parties, the interest was an allowable expense for purposes of rate setting.

The Director rejected the hearing officer's findings and order. The Director interpreted the relevant regulations to allow the Department to look back to the original transaction and, if the parties to that transaction

were related, to disallow the interest on the refinancing or transfer of the note to an unrelated party. The Director therefore concluded the interest expense was properly disallowed.

Americana appealed to the district court, which held the Department had misinterpreted its own regulations. The district court concluded that, because the interest on the debentures was actually paid to unrelated parties, it was an allowable expense. The Department has appealed.

 When an order of the Department is appealed to the district court and then to this court, we review the Department's decision, not that of the district court. *Bashus v. North Dakota Department of Human Services,* 519 N.W.2d 296, 297 (N.D.1994); *Hakanson v. North Dakota Department of Human Services,* 479 N.W.2d 809, 811 (N.D. 1992). Our review is limited to the record compiled before the Department. *Bashus, supra,* 519 N.W.2d at 297; *Hakanson, supra,* 479 N.W.2d at 811. Under Sections 28–32–21 and 28–32–19, we consider whether the Department's findings of fact are supported by a preponderance of the evidence, whether its conclusions of law are supported by the findings of fact, whether its decision is supported by the conclusions of law, and whether its decision is in accordance with the law. *Bashus, supra,* 519 N.W.2d at 297.

 The determinative issue presented in this case is whether the Department correctly interpreted its own regulations regarding disallowance of interest between related parties. Although interpretation and application of administrative regulations generally presents a question of law, we will accord some deference to an administrative agency's reasonable interpretation of its own regulations. *Hecker v. Stark County Social Service Board,* 527 N.W.2d 226, 234 (N.D.1994); *Hakanson, supra,* 479 N.W.2d at 814. An agency has a reasonable range of informed discretion in the interpretation and application of its own regulations, and the agency's expertise is entitled to special deference when the subject matter is complex or technical. *See, e.g., Cass County Electric Cooperative, Inc. v. Northern States Power Co.,* 518 N.W.2d 216, 220 (N.D.1994); *Luithle v.*

*Burleigh County Social Services,* 474 N.W.2d 497, 500–501 (N.D.1991); *In re Stone Creek Channel Improvements,* 424 N.W.2d 894, 900 (N.D.1988). As the court noted in *Hanson v. Industrial Commission,* 466 N.W.2d 587, 590–591 (N.D.1991) (citations omitted):

> "Ordinarily, determinations of administrative bodies are presumed to be correct. . . . If the subject matter of a question before an administrative agency is of a highly technical nature, the expertise of the agency is entitled to respect and appreciable deference."

This court has previously indicated that the rate setting procedures governed by Chapter 75–02–06, N.D.A.C., including the related-party rules, involve complex matters calling for agency expertise. *See In re Dickinson Nursing Center,* 353 N.W.2d 754, 758–759 (N.D.1984).

Section 75–02–06–04(7), N.D.A.C., provides that, to be an allowable expense, "[i]nterest must be paid to a lender that is not related to the borrower. . . ." "Related organization" is defined in Section 75–02–06–01(44), N.D.A.C., and there is no dispute that Mid–States and University were "related organizations" for purposes of rate setting when the original transaction occurred on September 29, 1983. Americana asserts, however, that because no interest was actually paid when the two were related, and because the interest at issue here was paid to members of the public through debentures, the plain language of the regulation makes the interest an allowable expense.

The Department interprets the regulation to allow the Department to look back to the original transaction and disallow the interest if the parties to that original transaction were related. In reaching this conclusion, the Department relies upon two other regulations which are part of the same regulatory scheme. Section 75–02–06–04(3) provides:

> "Interest paid by the provider to partners, stockholders, or related organizations of the provider is not allowable as a cost. Where the owner loans funds to a facility, the funds are considered capital, rather than borrowed funds."

The Department thus considers the original "loan" between Mid-States and University to be a transfer of capital, not a loan for the acquisition of facilities, and thus not includable as a proper expense for rate setting under Chapter 75–02–06, N.D.A.C.

The Department also relies on Section 75–02–06–02.1(2), N.D.A.C.:

"The cost effects of transactions which circumvent this chapter are not allowable under the principle that the substance of the transaction prevails over form."

The Department asserts its interpretation of the regulatory scheme is required to prevent circumvention of the related-party rule. Under the construction urged by Americana, a provider could convert non-allowable interest on a note to a related party to allowable interest by merely transferring the note to an unrelated party. The Department contends this could lead to sham transactions specifically designed to circumvent the related-party rule.

In *In re Dickinson Nursing Center, supra,* we analyzed the related-party rule as it applied to allowance of costs for increased depreciation and interest when two partners purchased the interests of the remaining partners in a nursing home. In holding that the related-party rules in Chapter 75–02–06, N.D.A.C., supported the Department's decision to disallow increased depreciation and interest when the purchaser and seller were related, we noted:

"Once relatedness is found, acquisition costs are categorically disallowed regardless of the fairness of the particular transaction.... The rule is intended to prohibit 'sweetheart contracts' and serves the dual goals of helping agency administrators avoid paying collusive or improperly increased costs, and of reducing the administrative burden."

*In re Dickinson Nursing Center, supra,* 353 N.W.2d at 758. We quoted with approval the rationale expressed for similar federal related-party rules:

" 'This regulation, like other "related organization" rules, is intended to have a "prophylactic" effect in guarding against bad faith dealing between organizations related through common control without inquiry into particular circumstances.... [The regulation] specifically recognizes that related organizations should be treated as a single entity for purposes of determining reasonable costs because the provider is, in effect, obtaining the facilities from itself. It is evident that inquiry into the fairness of transactions between related parties would be a demanding task indeed for the fiscal intermediary, while inquiry into the usually simpler issue of common control probably would have to take place anyway.' [Citations omitted.]"

*In re Dickinson Nursing Center, supra,* 353 N.W.2d at 758 (quoting *Stevens Park Osteopathic Hospital, Inc. v. United States,* 225 Ct.Cl. 113, 633 F.2d 1373, 1379 (1980)). That reasoning applies here. In this case, the transaction between Mid–States and University was in essence a loan by a provider to itself. Rather than require the Department to inquire into the specifics of the transaction, the regulations allow the Department to disregard the "loan" and treat it as a transfer of capital. *See* Section 75–02–06–04(3), N.D.A.C. It is the original suspect transaction, not the subsequent payment of interest, that the related-party rules were intended to address.

As previously noted, the rate setting function of the Department involves complex technical matters calling for specialized expertise. *See In re Dickinson Nursing Center, supra,* 353 N.W.2d at 758–759. The facts of this case amply demonstrate the complex—and often convoluted—nature of nursing home ownership transactions.[1] We therefore accord appreciable deference to the Department's interpretation of its own regulations. Under the facts of this case, the Department has reasonably interpreted the related-party rule in light of the overall regulatory scheme embodied in Chapter 75–02–06, N.D.A.C.

---

1. We have greatly simplified the facts in our opinion. The history of Americana's Fargo operation is replete with numerous mergers, acquisitions, and corporate reshuffling. Americana acknowledged that it was commonplace to have multiple corporate entities involved in the ownership and operation of a single facility.

We reverse the judgment of the district court and affirm the Department's order.

VANDE WALLE, C.J., and LEVINE and SANDSTROM, JJ., concur.

MESCHKE, J., concurs in the result.